

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-26-2004

# USA v. Thomas

Precedential or Non-Precedential: Precedential

Docket No. 03-4447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Thomas" (2004). *2004 Decisions.* Paper 105.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/105

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4447

———

UNITED STATES OF AMERICA

v.

MARSHAUN THOMAS
Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cr-00058-1)
District Judge: Honorable Katharine S. Hayden

———

Submitted Under Third Circuit LAR 34.1(a)
October 7, 2004

Before: SLOVITER, VAN ANTWERPEN, and COWEN, Circuit
Judges.

(Filed:  November 26, 2004)

OPINION OF THE COURT

———

Timothy M. Donohue
Arleo & Donohue
West Orange, N.J.  07052

       Attorney for Appellant

Christopher J. Christie
  United States Attorney
George S. Leone
   Chief, Appeal Division
Ricardo Solano, Jr.

Office of United States Attorney
Newark, N.J. 07102

     Attorneys for Appellee


SLOVITER, <u>Circuit Judge</u>.

     Marshaun Thomas appeals from his conviction and sentence following a guilty plea. Finding no error, we will affirm.

**I.**

     On September 26, 2002, Thomas pled guilty to participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The predicate racketeering acts committed by Thomas supporting his RICO conviction were the felony murder of Alex Irizarry on August 12, 1998 and a bank robbery on October 30, 2000. After accepting his guilty plea, the District Court sentenced Thomas to 360 months of incarceration, but acceded to Thomas' request that he be credited for the thirty months that he had already served in State custody.

     Following entry by the District Court of its final order, Thomas' counsel filed an appellate brief in this court pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), which holds that if appointed counsel, after a conscientious examination of the case, finds an appeal to be wholly frivolous, s/he must advise the court and request permission to withdraw. Defense counsel also has the responsibility of filing a brief referring to anything in the record that may arguably support an appeal. 386 U.S. at 744. We have stated that "[t]he duties of counsel when preparing an <u>Anders</u> brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous." <u>United States v. Youla</u>, 241 F.3d 296, 300 (3d Cir. 2001).

     In his <u>Anders</u> brief, Thomas' counsel averred that upon a complete review of the record he concluded that there are no non-frivolous issues for appellate review. Further, in order to discharge the duty to cite to anything in the record that may arguably support an appeal, counsel's <u>Anders</u> brief noted that Thomas applied for a downward departure but that the District Court, although recognizing

that it had the authority to depart from the first-degree murder guideline[1] where the defendant did not cause the death knowingly or intentionally, found that Thomas' conduct was within the heartland of the guideline. Likewise, the District Court, acknowledging that it had authority to take into account various "discouraged sentencing factors" in considering a downward departure (here, Thomas' asserted mental and emotional conditions and his limited education and vocational skills), held that it would not exercise this discretion to grant a downward departure in Thomas' case.[2] Finally, counsel's Anders brief also referenced Thomas' guilty-plea hearing--although counsel maintained that the Fed. R. Crim. P. 11 proceeding was sufficient in all respects.

Appellate counsel then requested permission to withdraw. Further, as required by Anders, counsel gave Thomas notice of his brief and advised him that he had the opportunity to file a pro se brief.[3] Thereafter, Thomas filed a pro se brief raising several issues. First, Thomas contends that Blakely v. Washington, __ U.S. __, 124 S. Ct. 2531 (2004), precludes the application of U.S.S.G. § 2A1.1 to his case. Second, he complains that his Fed. R. Crim. P. 11 hearing was deficient in several respects. Finally, he raises an ineffective assistance of counsel claim.

## II.

U.S.S.G. § 2A.1.1, termed "First Degree Murder," provides a

---

[1] See U.S.S.G. § 2A1.1 cmt. 1.

[2] It is axiomatic that this court "lack[s] jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted." United States v. McQuilkin, 97 F.3d 723, 729 (3d Cir. 1996). Thus, the District Court's refusal to grant Thomas a downward departure on these bases cannot support an appeal.

[3] In fact, upon review of the Anders brief, this court notified Thomas of the deadline for filing his pro se brief. The government correctly notes that Thomas filed his brief well after this deadline. However, we decline the government's invitation to hold the issues raised by Thomas in his pro se brief procedurally defaulted and will instead address Thomas' pro se brief on the merits.

3

base offense level of 43.[4] Due to Thomas' admitted murder of Irizarry, the District Court used this guideline in establishing Thomas' base offense level.

In Blakely, the Supreme Court of the United States, applying the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), held unconstitutional the application to Ralph Blakely of the State of Washington's sentencing guidelines. If Blakely were arguably applicable to this case, we would delay its disposition until the Supreme Court decides the two cases pending before it in United States v. Booker, 375 F.3d 508 (7th Cir. 2004), cert. granted, __ U.S. __, 125 S. Ct. 11 (2004) (mem.), and Fanfan v. United States, No. 03-47, 2004 WL 1723114 (D. Me. June 28, 2004), cert. granted, __ U.S. __, 125 S. Ct. 12 (2004) (mem.).

However, the Blakely opinion excepts from its scope sentences imposed "on the basis of the facts . . . admitted by the defendant." 124 S. Ct. at 2537. There are at least four possible interpretations of the language "facts . . . admitted by the defendant." First, that language could refer to facts set forth in the indictment to which the defendant pled guilty. Second, it could refer to facts set forth in the written plea agreement entered into by the defendant. Third, it could be limited to the facts necessary to prove a violation of the offense charged in the indictment. Fourth, it could refer to facts admitted in the colloquy with the District Court. See United States v. Leachman, 309 F.3d 377, 384 (6th Cir. 2002) (finding no violation of Apprendi where defendant "pled guilty to an indictment that specified the amount of drugs"); United States v. Doe, 297 F.3d 76, 88 (2d Cir. 2002) ("[A]s Doe's indictment did not properly charge drug quantity, the fact of his plea alone cannot be construed to convey an admission of drug quantity."); United States

---

[4]Because Thomas did not lodge a Sixth Amendment challenge to the Guidelines or the applicability of U.S.S.G. § 2A1.1 in the District Court, we review for plain error. United States v. Vazquez, 271 F.3d 93, 99 (3d Cir. 2001) (en banc); see also Fed. R. Crim. P. 52(b).

v. Henry, 282 F.3d 242, 248 (3d Cir. 2002) (suggesting that facts admitted by defendant during plea colloquy may be used to determine sentence without offending rule of Apprendi); United States v. Lujan, 268 F.3d 965, 969 (10th Cir. 2001) (applying Apprendi, stating: "[t]he indictment here did allege possession of a quantity sufficient for the mandatory minimum sentence that was imposed, and by pleading guilty to Count 1 of the indictment Mr. Lujan of course waived the right to have that fact determined by a jury"); United States v. Rosendary, 152 F. Supp. 2d 835, 839 (W.D. Pa. 2001) (stating that sentencing court can rely on facts admitted by defendant in plea agreement in determining sentencing without running afoul of rule of Apprendi).

In this case we need not decide which of the four possible interpretations is encompassed by the Blakely exception because all four are present. The Information, which is the document to which Thomas pled guilty, states:

> On or about August 12, 1998, at Jersey City, in the District of New Jersey and elsewhere, defendant MARSHAUN THOMAS, a/k/a "S," a/k/a "Verb," a/k/a "Shawney," while engaged in an attempt to commit robbery, and in the flight therefrom, did cause the death of Alex Irizarry, in violation of N.J.S.A. Sections 2C:11-3(3) and 2C:2-6.

App. at 17.

The Plea Agreement between the government and Thomas incorporated the allegation of the killing of Alex Irizarry as follows:

> RACKETEERING ACT 1 (Felony-Murder of Alex Irizarry), in which it is charged that on or about August 12, 1998, at Jersey City, New Jersey, in the District of New Jersey and elsewhere, defendant Marshaun Thomas while engaged in an attempt to commit robbery, and in the flight therefrom, did cause the death of Alex Irizarry, in violation of N.J.S.A. Sections 2C:11-3(3) and 2C:2-6.

That Plea Agreement was entered on the District Court's docket on September 26, 2002, and was presented to this court with the government's letter dated October 7, 2004.

The death of Irizarry was one of the two predicate acts for the

5

RICO violation charged in the Information.

Finally, Thomas admitted all of the facts relevant to that charge in the colloquy with the District Court, as follows:

> THE COURT: On August 12, 1998 were you in a car with three other members of VSOP [Van Nostrand Soldiers Out Politicking] and was it decided that you would commit a robbery of certain individuals who were standing on the street corner in Jersey City, New Jersey?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Were you armed with a handgun at the time?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Did you exit the car and walk in the direction of the individuals whom you intended to rob?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Did you approach the individuals and did you draw your handgun and demand that one or more of them turn over their property to you?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: At the time that you drew your handgun on these people did you know that your gun was loaded?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: When you demanded property from these people did one of them turn in your direction and at that moment did you fire your gun at him?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: At the time that you fired your gun were you a short distance away from this person?

6

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you know that you shot this person?

THE DEFENDANT: Yes, your Honor.

THE COURT: After shooting this person did you run back to the car and did you and the other three VSOP members drive away from the scene?

THE DEFENDANT: Yes.

THE COURT: Did you give the gun to one of the other VSOP members following the shooting?

THE DEFENDANT: Yes.

THE COURT: At some time following the shooting did you learn that the person you shot had died from his injury?

THE DEFENDANT: Yes.

App. at 45-46. Thus, although Thomas maintains that Blakely bars the application of U.S.S.G. § 2A1.1 to his case because neither the facts he pled to in the plea agreement nor the admissions he made during the Fed. R. Crim. P. 11 hearing established the requisite elements of first degree murder, it is apparent that Thomas' contention is without merit.

Even if we accept Thomas' position that he did not admit to an intentional killing, Application Note 1 to Section 2A1.1 (which is termed "First Degree Murder") makes patent that the guideline may be applicable in cases where death results during the commission of certain felonies, including robbery. See also United States v. Pearson, 203 F.3d 1243, 1275-76 (10th Cir. 2000). Therefore, the facts admitted by Thomas amply supported the District Court's application of U.S.S.G. § 2A1.1. Cf. Blakely, 124 S. Ct. at 2541 ("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."). In sum, even if Blakely has some impact on the Sentencing Guidelines, a question we need not decide at this time, the District Court's application of Section 2A1.1 at sentencing did not

7

violate Thomas' rights under the Sixth Amendment.[5]

## III.

Next, Thomas contends that his Fed. R. Crim. P. 11 colloquy was deficient in several respects. First, he asserts that the plea colloquy was insufficient because he was not informed of the elements necessary to establish the charged offenses. Specifically, Thomas complains that the District Court failed to explain adequately the mens rea element of felony murder. See generally Fed. R. Crim. P. 11(b)(1)(G).[6] Our review of the record, however, belies this contention. Rather, the record shows that the District Court carefully informed Thomas of all the elements of felony murder under the relevant New Jersey statutes.

Specifically, at the behest of the District Court, the Assistant United States Attorney prosecuting the case set forth for Thomas the essential elements of felony murder under N.J. Stat. Ann. § 2C:11-3:

> First. That the defendant act[ing] either alone or with one or more other persons was engaged in an attempt to commit the crime of robbery. Second. That during the course of this robbery or attempted robbery, the defendant or any other person caused the death of a person other than one of the participants. And finally, that the defendant acted knowingly and willfully in committing or attempting to commit the underlying robbery.

App. at 41-42 (emphasis added). With the elements of felony murder--including the mens rea element--thusly disclosed, the District Court proceeded to inquire of Thomas whether he committed a knowing and purposeful robbery that resulted in the death of the victim. See supra, Section II. Thus, the record shows that Thomas was properly informed of the mens rea element of the predicate RICO act felony murder.

---

[5]To be perfectly clear, we take no position on the post-Blakely constitutionality of the Guidelines.

[6]As mentioned above, the government charged Thomas with felony murder, as defined under New Jersey statute, see N.J. Stat. Ann. § 2C:11-3(3), as a predicate RICO act.

8

Thomas also claims that he should have been advised of possible defenses, such as voluntary intoxication, during his plea colloquy. The decisional law, however, is simply to the contrary. United States v. Broce, 488 U.S. 563, 573-74 (1989) ("Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty. The trial court complied with Rule 11 in ensuring that respondents were advised that, in pleading guilty, they were admitting guilt and waiving their right to a trial of any kind.").

In sum, Thomas' plea hearing fully conformed with the strictures of Fed. R. Crim. P. 11. We therefore decline to overturn his conviction and sentence on that basis.

## IV.

Finally, Thomas asserts that trial counsel provided ineffective assistance and thereby rendered his guilty plea involuntary. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Strickland v. Washington, 466 U.S. 668, 688 (1984). However, it is well-established that ineffective assistance of counsel claims are generally not entertained on a direct appeal. United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). Rather, as this court has held repeatedly, "the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed." United States v. Theodoropoulos, 866 F.2d 587, 598 (3d Cir. 1989) (citations omitted).

Moreover, Thomas' Strickland claim does not fit into that narrow class of ineffectiveness claims amenable to review on direct appeal. See, e.g., Headley, 923 F.2d at 1084; Gov't of Virgin Islands v. Zepp, 748 F.2d 125, 133 (3d Cir. 1984). Rather, Thomas' ineffective assistance of counsel claim is simply premature and thus we will dismiss it without prejudice to Thomas' right to raise the issue in an appropriate collateral proceeding.

## V.

For the reasons set forth above, we will affirm the District Court's judgment of conviction and sentence and dismiss without prejudice the appeal to the extent that it claims ineffective assistance of counsel.